**In re Quirino Machin SANCHEZ, Relator.**

**No. WR–80826–01.**

Court of Criminal Appeals of Texas.

July 9, 2014.

Margaret Schmucker, Margaret Schmucker, Austin, for Appellant.

Rene Guerra, Dist. Atty., Edinburg, Lisa McMinn, State's Atty., Austin, for the State.

## CONCURRING STATEMENT

JOHNSON, J., filed a concurring statement in which COCHRAN, J., joined.

There may be almost as many ways of processing applications for a writ of habeas corpus as there are counties in Texas, and this Court does not presume to set a standard one-size-fits-all procedure. What *is* required, however, is timely attention to, and transmission of, such applications to this Court. Sometimes tardy processing occurs because of issues in the clerk's office. Sometimes it occurs because of issues in the prosecutor's office or because a request for an order designating issues (ODI) gets lost on the judge's desk. Regardless of why there is tardy transmission to this Court, we are charged with making sure that applications for habeas corpus are timely considered and ruled on.

The statute, Code of Criminal Procedure art. 11.07, §§ 3(b), (c), states,

(b) An application for writ of habeas corpus filed after final conviction in a felony case, ... must be filed with the clerk of the court in which the conviction being challenged was obtained, and the clerk shall assign the application to that court. When the application is received by that court, a writ of habeas corpus, returnable to the Court of Criminal Appeals, shall issue by operation of law. The clerk of that court shall make appropriate notation thereof, assign to the case a file number ..., and forward a

---

copy of the application by certified mail, return receipt requested, by secure electronic mail, or by personal service to the attorney representing the state in that court, who shall answer the application not later than the 15th day after the date the copy of the application is received....

(c) Within 20 days of the expiration of the time in which the state is allowed to answer, it shall be the duty of the convicting court to decide whether there are controverted, previously unresolved facts material to the legality of the applicant's confinement....

The state has 15 days to answer, and that answer may include a request for an ODI; the trial court then has 20 days to rule on such a request. Absent the timely entry of an ODI, after 35 days the court clerk has a ministerial duty to send the application to the Court of Criminal Appeals—35 days after the clerk received the application, noted its receipt, assigned a file number, and promptly delivered the application to the district attorney's office—not 35 days after the district attorney's office acknowledges its receipt of a copy of the application.

While the fourteen-month delay in this case is not nearly as long as an eight-year delay I remember in a case from a different county, the system in Hidalgo County was ripe for prolonged delay. The biggest issue, it seems to me, was that the clerk's office received the application, notified the district attorney's office, then, without recording the date upon which the application was filed, delivered a copy of the application to the district attorney by placing the application in a "mailbox" for pick up by the district attorney's office. The date of delivery to the district attorney's office was recorded only when the applica-

tion was actually picked up by the district attorney's office, which may have been long after the date of the actual delivery. Without a date that shows when the application was received by the court clerk and a date showing when it was delivered to the state, the district attorney's office was free to pick up an application at its leisure, thereby delaying when the clock started to run on filing an answer that, if desired, requested an ODI.

While I am inclined to think that allowing only 15 days for the state to answer is unrealistically short, especially in large counties because of the caseload and in some smaller counties because of limited staff, that is the current law, and the state may not bend the rules because of "pressing deadlines" in other cases, inability to access the file on the underlying conviction, or being threatened with a writ of mandamus. And, while choosing to allow the application to be forwarded to this Court without an answer might, in some cases, result in a remand and thereby delay resolution, for some claims the case law is utterly clear, and the applicant's allegations either may be easily rebutted or do not require an extensive answer or even any answer at all, such as time-credit disputes, subsequent applications, complaints about the parole board's actions or inactions, etc.

Through its district attorney's office, Hidalgo County has indicated that it is now using certified mail, which is, as the county notes, an expenditure of public funds. I invite the county to be creative. The statute allows other means of notice: a deputy clerk goes to the district attorney's office and hands it to an assistant district attorney, who signs a dated form acknowledging receipt of notice and a copy of the application; prompt notice by phone, fol-

lowed by prompt pick up by an assistant district attorney, who signs a dated form acknowledging receipt of notice and a copy of the application; verifiable e-mail, noted in an archived "Sent" folder; or some other method that fulfills the requirements of the statute for documenting both receipt and timely filing of an application for a writ of habeas corpus by the court clerk and the date on which the state received a copy of the application. I think that all this Court asks is that the requirements of the statute be satisfied.